**Gene THEDFORD, Plaintiff in Error,**

v.

**Leo WINTERS and Charles Longacre, Defendants in Error.**

**No. 41903.**

Supreme Court of Oklahoma.

May 20, 1969.

Reynolds & Foreman, Norman, Rollie D. Thedford, Oklahoma City, for plaintiff in error.

Robert G. Grove, Oklahoma City, for defendants in error.

BLACKBIRD, Justice.

This appeal evolved out of an action by defendants in error, hereinafter referred to by name or as "plaintiffs", to dissolve a partnership, for an accounting, and for other relief, against plaintiffs in error, hereinafter referred to by name, or as "defendant". The association of these parties together, whether, at various times, it may have been a joint adventure, a partnership, or a corporation, was for the purpose of establishing a horse breeding farm.

The ultimate issue in this appeal is whether a quarter horse stallion, of Mexican origin, named "Pichirilo", is the property of the plaintiff Winters, or whether, by reason of the three parties' association together in a breeding farm business, the defendant, Thedford, owns an undivided one-third interest in said animal.

In 1961, a year or more before this controversy arose, plaintiff Winters and plaintiff Longacre were engaged together in raising quarter horses on Longacre's farm east of Norman, in Cleveland County. Thereafter, Longacre, and the defendant Thedford, who operated Acme Fence & Iron Company and had a farm south of Oklahoma City, in Oklahoma County, became acquainted with each other when the latter had one of his mares bred to a stallion of Longacre's Cleveland County farm.

Thereafter, in late 1961 or early 1962, plaintiffs moved various horses they owned, both individually and jointly, to Thedford's Oklahoma County farm and Thedford, with the plaintiff, Longacre, began to discuss arrangements for the future use of that farm for breeding, training and boarding horses.

In February, 1962, Thedford bought a stallion named "Siebeck Bar", and an arrangement was made for Longacre to handle this stallion in return for one-third of the stud fees earned with him. During that spring, Thedford had discussions with Winters contemplated to induce him to purchase an interest in Siebeck Bar.

In July, 1962, Longacre resigned his job at Norman, and started spending most of his time on behalf of the Thedford farm.

In August, 1962, plaintiffs, Winters and Longacre, attended a horse sale together at Ada and, there, Winters became acquainted with one Bill Moody of Texas. Moody gave Winters information about the stallion "Pichirilo" which interested him. Shortly thereafter, plaintiffs and their wives went together to Ruidoso, New Mexico, just before Labor Day, when a horse sale and annual races were to be held there. While there, Winters again encountered Moody and ascertained that Pichirilo could be seen on the farm of a Dr. Martinez, near Hebronville, Texas. After some discussion, Winters and Longacre and their wives, drove from Ruidoso to the Martinez farm in Texas and viewed Pichirilo. Winters then contacted Pichirilo's owners, the Guerrero brothers, with a ranch near Tor-

reon, Mexico, to which Winters and his wife, accompanied by Longacre and his wife, drove from Hebronville to meet the Guerreros. After negotiations with these Mexican owners of Pichirilo at Torreon, Winters entered into a contract with the Guerreros in which he agreed to lease him for five years at $2,000.00 per year, or 35% of the net profit from his stud fees, with an option to purchase this stallion for $15,000.00. Before completing these contract arrangements, Winters also agreed to purchase from the Guerreros two mares and two fillies at $1,000.00 each, and gave these vendors his check in the amount of $2,000.00.

When Winters and Longacre returned to Oklahoma from this trip to Mexico, Thedford was told about Pichirilo, but was not informed that Winters had an option to purchase him. Thereafter, plaintiffs and defendant, as a result of their discussions, agreed that they would all have a part in establishing Pichirilo as a breeding stud standing at Thedford's Oklahoma County farm; and that is where he was delivered, when later transported out of Mexico, pursuant to the understanding between the parties that they would share equally in the profits of said farm as a horse breeding establishment. Unbeknown to Thedford, Winters, by that time, had exercised his above-mentioned option to purchase Pichirilo, and had paid Guerrero brothers for him with his own check. After Pichirilo was delivered to the Thedford farm, the parties proceeded with their plans to engage in the horse breeding business there, and, accordingly, certain improvements were made on said farm, a corporation called "Alaskan Livestock Company" was formed, and advertisements, bearing said Company's name, and publicizing Pichirilo's availability there as a breeding stud, were placed in certain magazines and publications of nationwide circulation among horse owners and breeders.

Thereafter, certain disagreements developed between the plaintiffs and defendant, and plaintiffs, after engaging acreage near Broken Arrow on which to keep Pichirilo, moved him there from defendant's farm, and instituted the present action to dissolve the parties' partnership and obtain an accounting of the horse-breeding business they had been operating, as aforesaid, on defendant Thedford's farm.

At the trial of the action, defendant adduced testimony from his witnesses calculated to show that the three parties involved were joint adventurers at the time plaintiff Winters entered into his afore-described contract with the Guerrero brothers for Pichirilo. Whether or not they were partners, or joint adventurers, at that time, became the pivotal question in the case, under defendant's theory that, in such a fiduciary relationship, Winters could not, under legal principles governing such a relationship, acquire Pichirilo as his own exclusive property, but could only have acquired, and held title to, said horse in trust for all three of the parties. Winters' testimony was to the effect that the three parties did not become partners, or joint adventurers, in the horse breeding business on defendant's farm until *after* he (Winters) had purchased Pichirilo exclusively as his own property.

The trial court's judgment was in favor of plaintiffs on the issue of Pichirilo's ownership, and contains specific findings and conclusions that there never was any agreement between the parties to share equally in said stallion's ownership and that, after Winters' purchase of this horse, he was Winters' separate property, and that defendant had no more interest in him, than plaintiffs had in defendant's aforementioned Oklahoma County farm.

Defendant's argument for reversal is presented under five propositions, but it is under the first one that he advances the crucial contention that the trial court's findings "are wholly and completely against the clear weight of the evidence * * *". This argument is directed at certain findings supporting the conclusion that, when the plaintiff, Winters, entered into the contract with the Guerrero brothers to acquire Pichirilo, he was not yet a

partner, or joint adventurer, with defendant in the business of the Thedford farm, and consequently, did not owe the latter the duties that such business associates ordinarily owe each other in the acquisition of property for the joint venture, or enterprise.

No copy of the aforementioned written contract, under which Winters acquired Pichirilo from the Guerrero brothers, was introduced in evidence at the trial, the testimony being that Winters' copy thereof was destroyed in a fire at the aforementioned Broken Arrow acreage, but, on the basis of other testimony, this contract was entered into near Labor Day, which, in 1962, was September 3rd, and, in any event, must have been entered into previous to September 5, 1962, the unchallenged date of a discussion by plaintiffs and defendant concerning Pichirilo, upon plaintiff Winters' return from his trip to Torreon. In its judgment, the trial court determined that the three parties were partners " * * * *from* September, 1962, to January 1, 1964 * * *", (emphasis added); but defendant contends that the more reliable evidence shows that they were partners *before* September and that Winters' mission to Torreon was for, and as an agent of, the partnership, and it could not legally have resulted in his acquisition of said stud for himself, only.

We have carefully examined the record, with particular attention to those parts pointed out by defendant as supporting his arguments and representations; and we cannot say that the evidence, as a whole, is sufficient to discharge defendant's double burden of showing, by clear, cogent and convincing evidence, that Pichirilo was the subject of a constructive trust in favor of all three of the parties and that the findings and conclusions of the trial court, to a contrary effect, were clearly against the weight of the evidence, or contrary to law or established principles of equity. See Glens Falls Insurance Co. v. Johnson, Okl., 403 P.2d 229, 234, referring to Henderson v. Gifford, Okl., 318 P. 2d 404; and the latter opinion's quotation

(at p. 409) from Gaines v. Gaines, 207 Okl. 619, 621, 251 P.2d 1044, 1047. See also Vickers v. Horster, Okl., 451 P.2d 7, 13, citing Whitaker v. Town of Tipton, Okl., 426 P.2d 336, and King v. Gants, 77 Okl. 105, 186 P. 960.

In view of the above determination, we find it unnecessary to discuss defendant's arguments pertaining to the legal principles that would have governed the parties' relationship, and the proper adjudication of this action, had defendant been a partner, or joint adventurer, with Winters, or with Winters and Longacre, at the time the contract with the Guerrero brothers concerning Pichirilo was entered into.

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

All the Justices concur.