**Mamie S. BAREFOOT, Plaintiff in Error,**

v.

**The OKLAHOMA NATIONAL BANK AND TRUST COMPANY OF CHICKASHA, a corporation, Administrator with Will Annexed of the Estate of Emma Carmichael, Deceased, et al., Defendants in Error.**

**No. 42320.**

Supreme Court of Oklahoma.

Sept. 15, 1970.

---

Bert Barefoot, Jr., John Anthony Claro, Oklahoma City, for plaintiff in error; Barefoot, Moler, Bohanon & Barth, Oklahoma City, of counsel.

McElroy & Vaughn, Chickasha, for defendants in error.

BLACKBIRD, Justice.

This appeal involves an effort to impress three parcels of rural property in Grady County with a constructive trust, on the theory that title thereto had been earned as attorneys' fees by the Chickasha Law Firm of Barefoot & Carmichael. The two partners therein, Bert B. Barefoot and J. D. Carmichael, both now deceased, shared equally in the income of this firm, which existed from the year 1901 until January 1, 1937 when it was dissolved by reason of Barefoot's election to this State's Criminal Court of Appeals, now Court of Criminal Appeals, after which the then Judge Barefoot moved, with his wife, Mamie, and sons, from Chickasha to Oklahoma City. For several years after this occurred, Carmichael continued to maintain an office in Chickasha. His death occurred in October, 1942. Though Judge Barefoot continued to maintain a legal residence in Grady County, he and Mamie were living in a home they had purchased on Oklahoma City's Northeast 18th Street, at the time of his death in June, 1949.

After each of the two former law partners' respective deaths, their individual wills were probated in the County Court of Grady County, the proceedings covering Carmichael's estate being said court's Probate Cause No. 3966, and those covering Barefoot's being said court's Probate Cause No. 5028.

During the many years that their partnership existed, the Messrs. Barefoot and Carmichael kept very unsophisticated records of their law firm's income and expenses. These records consisted of ledger-type books, in which each partner customarily wrote down, in his own handwriting, the cash fees he collected for the firm, with a notation to indicate the transaction, litigation, or legal services for which they were paid, except sometimes these legal services were paid for in conveyances of real estate instead of cash. By reason of this manner of payment for the law firm's services, each partner, at his death, owned interests in several tracts of land, for which neither had paid any cash consideration. This was unquestionably the way in which the partners acquired some of the parcels of reality that were described in the final decrees of distribution filed in the above mentioned separate probate proceedings (Nos. 3966 and 5028) covering their individual estates.

The general question which Mamie S. Barefoot, Bert B. Barefoot's above mentioned widow, as well as executrix and sole beneficiary of his estate, raised, as

plaintiff in the present action, was whether or not the parcels of such property that were described in the final decree she filed in her deceased husband's estate proceedings, Cause No. 5028, supra, constituted *all* of such partnership property to which she had been entitled, because of his law partnership with Carmichael. She claimed that it was not all of such ·property, and, on the theory that an equal, or 50%, interest in certain parcels of property described in the final decree filed in the Carmichael estate proceedings, Cause No. 3966, supra—not reflected in the final decree in her husband's estate proceedings— actually belonged to Bert Barefoot and should have descended to her upon his death, she sought to recover Barefoot's claimed interest in those parcels, as said deceased's devisee, on the theory that all such property had been held in trust for said rightful owner and/or his said heir and devisee.

Miss Emma Carmichael, a sister of the late J. D. Carmichael, and sole devisee and distributee of all of the real estate in his estate, died testate in October, 1963; and the Chickasha Bank appearing herein was named administrator with the will annexed of her estate. Under the final decree entered during October, 1964, in the probate proceedings covering her estate (Grady County Probate Cause No. 7617), this Bank, as the trustee named in Emma Carmichael's will, was distributed the three parcels of property involved in this action.

Accordingly, said Bank was the principal defendant named by Mrs. Barefoot, hereinafter referred to as "plaintiff" herein. These three parcels which descended to Emma Carmichael from the estate of her deceased brother, J. D. Carmichael, and in which plaintiff claims her deceased husband, Barefoot, was entitled to an undivided ½ interest as an equal partner in the law firm of Barefoot & Carmichael (but which he never received), are described in paragraph 6(a), (b), and (d) of said plaintiff's amended petition as follows:

"(a) Fee simple title to the N/2 of the NW/4, and SW/4 of the NW/4 of Section 26, Township 5 North, Range 6 West, Grady County, Oklahoma;

"(b) Fee simple title to the SE/4 of the SW/4 of the SW/4 of Section 23; and the N/2 of the NW/4 of the NW/4 of Section 26; and the NE/4 of the NE/4 and the E/2 of the NW/4 of the NE/4, and the SW/4 of the NW/4 of the NE/4 of Section 27, all in Township 6 North, Range 7 West, Grady County, Oklahoma;

"(d) An undivided one-twelfth (½) mineral interest in and under Lots 3, 4, · 7 and 8, and the SW/4 of the SW/4 of the SE/4 of Section 13; Lot 1 and the W/2 of the NW/4 of the SE/4, and the SE/4 of the NW/4 of the NE/4 of Section 24, all in Township 5 North, Range 8 West, and a strip of land 100 feet by 1,000 feet on the West side of Lot 2, Section 13, Township 5 North, Range 8 West, Grady County, Oklahoma."

We will hereinafter refer to the properties described in "(a)", "(b)" and "(d)" above as the Stigman, Gorman, and Eder tracts or interests, respectively.

Real estate mortgages were foreclosed on each of these tracts in the District Court of Grady County in said court's Cause No. 15779 entitled "Lottie Stigman vs. John Slain Scarlett * * * (et al)", Cause No. 13750 entitled "Cora E. Gorman vs. Beatrice A. Williams * * * (et al)", and Cause No. 14859 entitled "Jennings Eder vs. Henry E. Doss * * * (et al)", respectively. These foreclosure actions will sometimes be hereinafter referred to as the Stigman, Gorman, and Eder cases. Each was filed through the law firm of Barefoot & Carmichael as attorneys for the plaintiffs therein.

By other facts established in conveyance and court records, it was shown that several months after default judgment was entered aganist them, the defendant Scarlett in the Stigman case deeded the land involved therein to J. D. Carmichael in February, 1937; that, at the time of his death, Carmichael held an undivided ¾ths interest in said tract for the plaintiff in that case, Lottie Stigman, and a client by

the name of "Harry Culver", and that in February, 1944, Lottie Stigman and Culver and his wife deeded their interest to Carmichael's devisee, Emma Carmichael, who thereafter deeded away the surface of said tract, and thereafter, by deed recorded in November, 1947 (about a year and a half before Barefoot's death), and a later one, recorded in September, 1952, she deeded an undivided 1/8th interest each in the minerals under said tract. It was Culver and Lottie Stigman, respectively. Between these two conveyances, Miss Carmichael deeded to Mrs. O. L. Dews, in August, 1951, an undivided 1/12th interest in the minerals under said tract. It was further shown that in September, 1963, just before Miss Carmichael's death, she deeded 20/120ths of the minerals to a certain university, and that, approximately a year later, Oklahoma National Bank, the aforementioned trustee of her estate, deeded to one Chapman the remaining 1/2 of the minerals to which Miss Carmichael held record title at her death.

The parties' stipulation recited facts showing that Cora Gorman obtained title to the Gorman tract through a sheriff's sale held during December, 1934, in the Gorman case, and that she thereafter conveyed said tract to J. D. Carmichael by a quit claim deed recorded in February, 1936; and that thereafter Emma Carmichael deeded away the surface of said tract in 1960, and leased the minerals for oil and gas exploration in September, 1961.

As to the hereinabove mentioned Eder tract, the stipulation recited facts showing that, in the Eder case, the plaintiffs and judgment creditor therein, Jennings Eder, bid the land in at the sheriff's sale held therein during 1936 and that in 1938 he sold part of the surface, and about a month later executed and delivered a mineral deed conveying to J. D. Carmichael an undivided 1/12th interest in the minerals under that tract.

At the trial it was further shown that Mrs. Ora Dews, after having been the only regularly employed person doing stenographic and secretarial work in the office of Barefoot & Carmichael from early in January, 1915, until said firm was dissolved as aforesaid in January, 1937, continued to work as a secretary in Mr. Carmichael's Chickasha office until the petition to probate his will was filed soon after his death in October, 1942, in Cause No. 3966, supra. Mrs. Dews had an understanding with a Chickasha law firm that these proceedings would be conducted in its name, but that she would prepare the pleadings and other papers necessary therefor. It was further shown that, while these proceedings were still pending, Mrs. Dews accepted employment by the Criminal Court of Appeals as Judge Barefoot's secretary, and she assumed her duties as such in January, 1943.

Thereafter, Mrs. Dews continued to work on the Carmichael estate proceedings part time, while acting as Judge Barefoot's secretary; and she testified that the Judge also advised her with reference to this work, and had access to her files and records regarding the Carmichael estate that were kept in his office, while the estate proceedings were pending. She testified positively that Judge Barefoot helped her with the returns she filed at the Oklahoma Tax Commission for determination of the J. D. Carmichael estate's inheritance tax liability; that he checked, and discussed with her, the final decree which she prepared, and was filed, in the probate proceedings on March 23, 1944; that in both of these documents the three properties involved herein were specifically described and represented as being integral parts of said estate; and that Judge Barefoot made no suggestion or claim that he had any interest in either of them.

Plaintiff testified that in July, 1950 (about a year after her husband's death), she and Emma Carmichael entered into a contract under which they caused to be appraised, and divided between themselves, the surface rights in the land interests that the Messrs. Barefoot and Carmichael had obtained in return for legal services rendered by their law firm and that each of

these women retained equal shares in the mineral rights under those tracts. Plaintiff denied that, at that time, she had seen the property descriptions set forth in the final decree that had been filed in the J. D. Carmichael estate proceedings and testified that, in her settlement with Miss Carmichael, she relied on a list of properties that she, or her attorney son, had made from deeds her husband had.

Plaintiff further testified, in substance, that she first suspected that the records in her deceased husband's estate did not reflect all of the property interests Barefoot and Carmichael earned as law partners when she made certain discoveries concerning Carter County property. At one place in her testimony, she indicated that she first discovered that Barefoot and Carmichael owned a certain Carter County tract (which she did not describe) when an Ardmore attorney, Mr. G, wrote to her about leasing it. In another part of her testimony, she spoke of a Carter County tract she referred to as the "Bailey farm", and testified that the first inkling she had that the two law partners owned the surface rights in said tract was when she was perusing the aforementioned ledger books the partners kept on their law firm's income and expenses and found therein an item, in Carmichael's handwriting, which read: "Rent of the Bailey farm, $2.50." (The evidence showed that these ledger books were delivered to Judge Barefoot after Carmichael's death and were stored in the Barefoot's Northeast 18th Street home, but plaintiff testified she never examined them until she had sold this home and was preparing to move to another part of the City in 1964.) Plaintiff testified that, upon making this discovery, she started going over these books "to try to determine what he meant by the farm." The witness' further testimony was to the effect that her discovery that the two law partners owned this surface interest led to the full investigation which preceded her filing this action and to her discovery that they shared other land interests, not involved in this action, that were not reflected in their separate estate proceedings and ot which she had never been apprised from any source.

At the close of the evidence, defendants demurred thereto, and, after that demurrer was overruled, the court took the case under advisement, pending the parties' submission of briefs. About two months thereafter, the court, upon consideration of the issues therein, rendered judgment in favor of the defendants, after finding the evidence insufficient to establish that the three hereinbefore described parcels of realty belonging to plaintiff as the subject of a constructive trust, and that plaintiff's cause of action, if any, was barred both by laches and the 15-year statute of limitations.

After the overruling of her motion for new trial, plaintiff lodged the present appeal.

Under her first proposition for reversal of the trial court's judgment, plaintiff contends that the elements of her cause of action were proved in an uncontradicted manner. In support of this proposition, she cites the uncontradicted proof that the deceased Carmichael and her late husband were law partners before the latter became an Appellate Court Judge, and she argues that the evidence also shows that, during the existence of this law partnership, the two men shared equally in *all* fees collected by their law firm for legal services, regardless of which of the partners performed any particular service.

No written partnership agreement between Barefoot and Carmichael was ever introduced in evidence, and, apparently, they had none. But, on the basis of the entries on sheets of their firm's aforementioned ledger books that were introduced in evidence, plaintiff says that (under the two partners' system of record keeping) the only reference therein made to any matter the firm handled was contained in the notation therein made of fee collections by the particular partner to whom each fee was paid. Plaintiff takes the position that these ledgers show no fee collected for the Stigman, Gorman and Eder cases; and principally on the basis of this circumstance and the absence of any type of con-

sideration, other than, or different from, the firm's legal services, having been given for Carmichael's deeds to the interests (described therein) in the land involved in the aforementioned real estate mortgage foreclosure actions, plaintiff argues that the only logical conclusion is that such services were the sole consideration for these conveyances, thus entitling Barefoot, under the parties' partnership arrangement, to one-half of these interests. Plaintiff says this conclusion, as to the character of the consideration for these deeds, must obtain from the evidence as a whole, even when it is measured by the "clear and convincing" standard.

We do not agree, because, after thoroughly examining the evidence, we do not think it sufficient to discharge plaintiff's double burden in cases in which it is sought to establish a constructive trust. In this case, that burden entailed showing, by clear, cogent and convincing evidence, that these land interests were conveyed to Carmichael in consideration of legal services; that such legal services were performed under the Barefoot-Carmichael firm's partnership arrangement; and that the trial court's judgment to the contrary was clearly against the weight of the evidence. In this connection, see the discussion and authorities cited in Thedford v. Winters, Okl., 454 P.2d 657, 660. Also notice Presgrove v. Robbins, Okl., 451 P. 2d 961 (2nd syll.).

The Carmichael deeds are not a part of the record before us, and this record does not reflect whether or not they bore federal revenue stamps. Presence of such stamps on deeds, at the time these were filed and recorded, usually indicated that at least a part of the consideration therefor was cash, and the approximate amount thereof. The trial court's judgment has more, however, than the absence of direct evidence to support it, because the aforementioned Mrs. Dews gave testimony from which the court could have reasonably concluded that, as Carmichael's partner, Barefoot did not share in the attorneys'

fees paid in all of the real estate mortgage foreclosures handled in the firm's name.

Mrs. Dews testified that the aforementioned Harry Culver was a client of Mr. Carmichael. She further testified that the "firm" had put Culver through bankruptcy at one time, but that she didn't remember Barefoot doing any of his work during the firm's existence, or until after Carmichael died. This witness further stated that Barefoot lacked confidence in Culver and "his deals", and that there was no "love lost" between the two. She said "Culver was always about ready to get rich and it usually fell flat." Mrs. Dews further testified that Messrs. Carmichael and Culver "had a deal" of some kind "in which Culver would acquire notes and mortgages at a great discount" and Carmichael would thereafter foreclose the mortgages, and that the two acquired property in that manner, but that Barefoot "didn't want to have anything to do with those Harry Culver deals." This witness further testified, in substance, that the Stigman case was one of the cases that was filed under this working arrangement between Culver and Carmichael; and she indicated that, in such matters, Culver would obtain an assignment of the note and mortgage involved, but would not file same of record until later; and that such foreclosure actions were instituted in the name of his assignor. Mrs. Dews further testified that, in the Stigman case, Carmichael "put up some money" to pay the taxes on the property involved; and she indicated that, both for this reason and the further reason that his law partner, Barefoot, didn't want to have anything to do with the Harry Culver deals, the Stigman case was considered, from the standpoint of the law partnership, as Carmichael's individual case. This testimony is consistent with the affidavit concerning the Stigman tract that Culver made, and which was filed of record in the County Clerk's office in September, 1946.

Mrs. Dews further testified that when, in his judicial chambers at the State Capitol, she went over with Judge Barefoot the final decree she had prepared for

filing in the J. D. Carmichael estate proceedings, Barefoot recognized and discussed the "Harry Culver tracts" that were listed therein and remarked that "Carmichael finally got several little pieces of property from the Harry Culver deals", and he added that Miss Emma Carmichael "will never get enough off of that to pay the taxes."

As to the Gorman case, Mrs. Dews testified, by deposition that Cora Gorman, the plaintiff in that case, was Mr. Carmichael's client, and that he bought some real estate from her. The witness inferred that, for such purchases, Carmichael may have used part of the funds that, at different times, he borrowed out of "quite a little sum" that his wife's cousin in Florida "sent up here" for investments and loans.

In view of such evidence as that above referred to, and in the absence of any direct evidence that Barefoot ever had any interest in either of the three properties involved in this action, we cannot hold that the judgment of the trial court is clearly against the weight of the evidence. Accordingly, said judgment is hereby affirmed.

All the Justices concur.