ATLANTA EXPLORATION, INC., J. C. Ferguson III and Bettye Perry *v.* ETHYL CORPORATION

89-213                                                784 S.W.2d 150

Supreme Court of Arkansas
Opinion delivered February 12, 1990

332

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *I. Prewett*; and *Burbank, Dodson, & McDonald*, by: *Don B. Dodson*, for appellants.

*Anderson, Crumpler, & Bell, P.A.*, for appellee.

Tom Glaze, Justice. This appeal involves an oil, gas and mineral rights case. Appellants, Atlanta Exploration, Inc. (Atlanta), J. C. Ferguson III (Ferguson III), and Bettye Perry (Perry), contend the trial court erred (1) in holding Ferguson III's and Perry's ownership interests were effectively integrated in a brine production unit established by appellee, Ethyl Corporation (Ethyl), in 1982, (2) in finding Ethyl not liable for penalties or attorney's fees under Ark. Code Ann. §§ 15-74-601 to -74-604 (1987) and in failing to award prejudgment interest, and (3) in applying the three-year statute of limitations erroneously.[1] Ethyl, on cross-appeal, argues the trial court erred in finding that Ferguson III's grandfather, J. C. Ferguson Sr., had not committed fraud in executing certain documents and receiving royalties and in holding that Atlanta should not be barred from recovery because it knew about and benefited from that fraud. We affirm the trial court's decision on appeal, but modify the judgment to award the appellants prejudgment interest, and affirm on cross-appeal.

The facts are largely undisputed. On May 24, 1960, H.C. Ferguson conveyed by warranty deed all of his undivided interest in S.W. 1/4 of N.W. 1/4 of Section 18, Township 18 south, Range 19 west, located in Columbia County, to J. C. Ferguson Jr. (Ferguson Jr.), his grandson. This property is the center of this controversy. In 1964, Ferguson Jr. died intestate survived by his widow, Bettye Ferguson (now Perry), and his son Ferguson III. After Ferguson Jr.'s death, on February 11, 1966, H. C. Ferguson again conveyed the same property by warranty deed to his son,

---

[1] We note that J. C. Ferguson III uses a different spelling of his name, but for clarity we will use only one spelling of Ferguson in our opinion.

Ferguson Sr. In 1980, Ferguson Sr. executed leases for oil, gas and brine, regarding the property. Ethyl became the owner of the leases, and was unaware at the time that Ferguson III owned the Ferguson acreage subject to Perry's claim as Ferguson Jr.'s widow.

In 1982, Ethyl drilled Baker No. 1 well on a 160-acre oil and gas unit and Ethyl also petitioned the Arkansas Oil and Gas Commission to form a brine unit of 1076.5 acres using this same well. The Ferguson acreage was included in the units, but was not the land on which the well was located.

Notice of Ethyl's application to establish the brine unit was published for one day in the Magnolia newspaper, *The Daily Banner News*. The notice requested that the owners of unleased interests within the unit elect whether or not to participate in 60 days. The notice also contained a list of the owners of unleased mineral interest, but stated that it included but was not limited to those listed or named owners. Ferguson III and Perry were not specifically listed because Ethyl was unaware of their ownership of property. The acreage subsequently was unitized by order of the Arkansas Oil and Gas Commission. Ethyl's well proved very successful and produced oil, gas and brine from 1982 until 1986. In 1986, Ethyl completed the drilling of another well named Baker No. 2, and its first disbursements were made in January of 1987. Brine continued to be produced to the time this litigation was filed. Ferguson Sr., rather than Ferguson III and Perry, received royalties from the well's production because of the leases he previously executed.

When Atlanta learned of Ethyl's plans to drill Baker No. 2 well, it commenced acquiring oil and gas leases in the acreage involved, and on May 20, 1987, Ferguson Sr. executed such a lease, which included the same property described in the earlier leases. Alan Ribble, the sole stockholder of Atlanta, discovered Ethyl's earlier mistake when he forwarded the new lease to Ethyl. Ethyl refused to pay because the leases were signed "J. C. Ferguson," and the ownership of the property was in the name of Ferguson Jr.[2]

---

[2] Apparently, Ethyl's title work reflected Ferguson Jr. owned the property rather than Ferguson III because nothing appeared of record showing Ferguson Jr. had died. One

Ribble subsequently called Ferguson Sr., and after discussing with him the relationships between the various Fergusons and the leases and deeds as they were executed, Ribble became fully aware that Ethyl had paid royalties to the wrong Ferguson.

Ribble did not immediately inform Ethyl of its mistake, because he first wanted to execute a lease with the correct person. After leasing from J. C. Ferguson III, Atlanta then notified Ethyl about its mistake.

Atlanta, Ferguson III and Perry joined forces in suing Ethyl to collect past royalties.[3] Specifically, they requested that the court quiet title to the Ferguson acreage in Ferguson III, recognize Perry's claim in such acreage, declare Atlanta the owner of the leasehold estate covering the acreage and award Ferguson III and Perry statutory penalties and attorney's fees for bringing the action. Ethyl answered denying the appellants were entitled to any relief. It also counterclaimed, raising certain general defenses but in particular, alleged that Atlanta was not entitled to relief because it had benefited from Ferguson Sr.'s fraudulent execution of documents and receipt of royalties. As previously noted above, the trial court denied Ethyl's claim altogether, and while it recognized appellants' respective interests in the property, leases and deeds in issue, the court limited recovery from Ethyl to those mineral interests payable only during the three-year period prior to the appellants' filing their action.

In their first argument, appellants claim basically that they are not bound by the Oil & Gas Commission's 1982 integration order that unitizes the Ferguson acreage or by any royalties paid as a result of it and that they are entitled to recover the fair market value of the brine produced since 1982, less the production costs. To support their argument, they argue the notice given by the Commission was not proper, it was not directed to "unknown owners" and it was not directed to non-resident owners, which Ferguson III was at the time the integration order was issued.

---

of the earlier leases was signed by Ferguson Sr. as "J. C. Ferguson," but no one questioned whether the lease was signed by the right Ferguson.

[3] Actually, they agreed to deduct all royalties previously paid Ferguson Sr. but asserted they were entitled to the fair market value of such royalties which had not been paid and which was in excess of the royalties already paid.

Appellants offer no case authority in support of their argument and cite only Ark. Code Ann. § 15-76-309(b) (1987), which requires that integration orders be made after notice and hearing and § 15-76-310 (1987), which provides that a copy of the integration must be sent or otherwise made available to each owner in the unit.

■ Although Ethyl's notice did not mention unknown owners, it was addressed to "unleased mineral interest owners" and it then listed, but stated it was not limited to, each owner known at the time. Certainly, Ferguson III came within such a description. In these matters, the General Assembly has given the Commission broad authority when prescribing its procedure regarding its hearings as follows:

> (a) The commission shall prescribe its rules of order and procedure with respect to all hearings or proceedings hereunder in accordance with and as limited by the laws of this state applicable to hearings and other proceedings before the commission under other acts of this state, including provisions of law regarding notice and hearing and provisions of law regarding the promulgation by the commission of rules, regulations, and orders, including changes, renewals, or extensions thereof and including emergency promulgations.

Ark. Code Ann. § 15-76-307(a) (1987).

■ Furthermore, § 15-76-307(b) provides the Commission with the authority to prescribe the manner and form of the notice given of the public hearing that is required before the Commission promulgates or issues any rule, regulation or order. The Commission's notice met the twenty-day notice requirement set out in § 15-76-307(b), and it also otherwise is in keeping with Ark. Code Ann. § 15-72-323 (1987), another related statutory provision, that requires a public hearing notice to be published at least one time in a general circulation newspaper in the county or counties where the lands are embraced. Appellants urge no constitutional or due process arguments regarding the notice provided by the Commissioner. Nor do they argue that Ark. R. Civ. P. Rule 4 should apply.[4] In sum, we hold the Commission's

---

[4] Appellee mentions Rule 4 in its brief, but disposes of it by stating the Rule does not

notice met the statutory requirements, and the public hearing and resulting integration order issued by the Commission in 1982 were proper and binding on the appellants.

In the second point, the appellants argue that they are entitled to 12% interest on the back royalties owed to Ferguson III and that their attorney's fees should be paid. Ark. Code Ann. § 15-74-601(a) (1987) establishes the time limits when oil and gas payments must be made. Section 15-74-601(e), in relevant part, provides that if payment is not made within these time limits, the first purchaser (here Ethyl) is required to pay interest to those legally entitled to the *withheld proceeds* at the rate of 12% per annum on the non-paid amounts. In addition, Ark. Code Ann. § 15-74-603(e) provides that the prevailing party in any proceeding brought for proceeds not paid timely shall be entitled to recover any court cost and reasonable attorney's fee.[5]

In support of this argument that they are entitled to penalties and attorney's fees, appellants cite *TXO Production Corp.* v. *Page Farms, Inc.*, 287 Ark. 304, 698 S.W.2d 791 (1985) and *TXO Production Corp.* v. *First Nat'l Bank of Russellville*, 288 Ark. 338, 705 S.W.2d 423 (1986). Although attorney's fees were affirmed on appeal in those two cases, the facts involved in those holdings are clearly distinguishable from the ones before us now. In the first TXO Production case, the court concluded that there was no evidence to support TXO's claim that it failed to pay proceeds because it found the title was unmarketable. The court found that even TXO's own title opinion failed to support TXO's position. In the second TXO case, this court merely affirmed the trial court's assessment of penalties and attorney's fees because TXO made untimely payments.

Here, Ethyl made timely payments, but due to a mistake, it made them to the wrong person, *viz.*, Ferguson Sr. instead of Ferguson III. Our court has recognized that our law governing timely oil and gas payments is remedial. *TXO Production Corp.* v. *First Nat'l Bank of Russellville*, 288 Ark. 338, 705 S.W.2d 423. When considering remedial legislation, we have

apply when special statutory provisions for notice are applicable. *See Watts* v. *Reynolds*, 286 Ark. 425, 692 S.W.2d 247 (1985); Ark. R. Civ. P. Rule 81(a).

[5] This section has been amended since this action was tried below. *See* Ark. Code Ann. § 15-74-603(e) (Supp. 1989).

stated that it should be construed with appropriate regard to the spirit which prompted its enactment, the mischief sought to be abolished and the remedy proposed. *Skelton* v. *B. C. Land Co.*, 260 Ark. 122, 539 S.W.2d 411 (1976). Arkansas's law is designed to prevent a company from withholding the payment of royalties to persons entitled to them. It does not, however, embrace or address the situation where timely payments are made but, by mistake, were made to the wrong person. Under these circumstances, we believe the trial court correctly refused to award appellants the penalty and attorney's fee they requested.

Appellants alternatively argue they are entitled to prejudgment interest.[6] We agree. The trial court awarded judgment to appellants for certain payments that had accrued within the three-year period prior to filing this action. After deducting a $500.77 amount paid J. C. Ferguson, as stipulated by the parties, the court calculated that Ethyl owed Ferguson III and Atlanta $3,651.87 and Perry was due $1,825.93. Except for its claim against Atlanta on cross-appeal, Ethyl does not challenge these amounts or judgments.

We have stated that the test for an award for prejudgment interest is whether a method exists for fixing an exact value on the cause of action at the time of the occurrence of the event which gives rise to the cause of action. *See Hopper* v. *Denham*, 281 Ark. 84, 661 S.W.2d 379 (1983); *Lovell* v. *Marianna Fed. Sav. & Loan Ass'n*, 267 Ark. 164, 589 S.W.2d 577 (1979). If such a method exists, prejudgment interest should be allowed, because one who has the use of another's money should be justly required to pay interest from the time it lawfully should have been paid. *Id.* Where prejudgment interest is collectible at all, the injured party is always entitled to it as a matter of law. *Wooten* v. *McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981). Here, clearly at the time of the trespass, the amount of damages could be determined. Therefore, prejudgment inter-

---

[6] In so stating we note the appellee's misplaced reliance on *Dobson* v. *Oil & Gas Comm'n*, 218 Ark. 160, 235 S.W.2d 33 (1950). We refused to address the question of prejudgment interest on royalties in *Dobson*, because the chancellor had not ruled on the issue in the first instance. However, here the chancellor specifically stated that the appellants were not entitled to prejudgment interest. Appellee offers no other legal authority or argument concerning why prejudgment interest should not be awarded in these circumstances.

est must be awarded to give the appellants complete indemnity. *See Ward* v. *Spadra Coal Co.*, 168 Ark. 853, 272 S.W. 353 (1925).

Considering appellants' final argument, we first note that all parties agree that the appellants' claims are ones of trespass and that the three-year statute of limitations under Ark. Code Ann. § 16-56-105(4) (1987) applies. The parties differ, however, on when the limitation commenced. Appellants contend that the three-year period did not commence until the trespass was discovered in May of 1987, or until the last oil and gas lease was taken in December of 1986. Appellee argues the limitation period began when the original trespass occurred in 1982. The trial court agreed with appellee's position below, and on appeal, we agree as well.

The original, wrongful act complained of in this matter was the inclusion of Ferguson III's property in the 160-acre drilling unit, and the production that commenced from that unit in 1982. Appellants agree on this point, and the parties also agree that the trespass was a continuing one from that date. However, appellants suggest that Ferguson III could have never been reasonably expected to discover the trespass. In this respect, he argues variously that he was a non-resident of the state, was unaware he owned the Ferguson acreage and that even if he knew of such ownership, the well was not located on the acreage.

In *Arkebauer* v. *Falcon Zinc Co.*, 178 Ark. 943, 12 S.W.2d 916 (1929), the court held that where a wrongful act results in a recurring or continuing injury, there is a cause of action not only for the injury consequent upon the original act but also for such successive ones as may result in the future, in which case the statute attaches at the time of the occurrence of the injury. This court has also held that a mere ignorance of one's rights does not prevent the operation of the statute of limitations, but where the ignorance is produced by affirmative and fraudulent acts of concealment, the statute of limitations does not begin to run until the fraud is discovered. *Williams* v. *Purdy*, 233 Ark. 275, 265 S.W.2d 534 (1954). The court in *Williams*, quoting from *McKneely* v. *Terry*, 61 Ark. 527, 33 S.W. 953 (1896), stated the following rule with approval:

No mere ignorance on the part of plaintiff of his rights, nor the mere silence of one who is under no

> obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it.

The *Williams* court also announced that the mere fact plaintiffs are non-residents does not entitle them to preferred consideration under the statute of limitations. *Williams*, 223 Ark. at 279, 265 S.W.2d at 536.

In the present case, the record reflects no evidence that Ethyl perpetrated any fraud in this matter and any wrong it committed was due to mistake. And while appellants argue that Ferguson III could never have reasonably discovered Ethyl's mistake and resulting trespass in 1982, we believe the evidence reflects otherwise. Here, Ferguson III, although a small boy at the time of his father's death, could have later ascertained the status of his father's estate. The deeds and leases executed in connection with the Ferguson estate were recorded as a matter of public record, and exercising reasonable diligence, Ferguson III could have learned of his acreage and how it had been affected. Since the trial court limited appellants' recovery for production revenues to the three-year period prior to bringing this action, it presumably concluded the limitations commenced in 1982. After reviewing the record, we are unable to say the court was clearly erroneous.

On cross-appeal, Ethyl argues the trial court erred in finding that Ferguson Sr. did not commit fraud and in concluding Atlanta was not barred from recovery by having benefited from that fraud. Ethyl cites *Malakul v. Altech Arkansas, Inc.*, 298 Ark. 246, 766 S.W.2d 433 (1989), for the proposition that one who accepts the fruit of fraud, knowing the means by which it was obtained, is liable therefor even though he did not personally participate in the fraud.

The simple answer to Ethyl's claim is that there is sufficient evidence to support the trial court's finding that Ferguson Sr., by his acts, did not intend to misrepresent his ownership or entitlement to the Ferguson acreage and royalty payments. Admittedly, there was evidence that Ferguson Sr.

varied in the use of his signature, when executing documents, sometimes using Sr. or Jr. and, at other times, using neither designation. While one might argue such practice was Ferguson Sr.'s way of misrepresenting his ownership of the property and entitlement to royalty payments, Ferguson Jr. testified that he had discovered his grandfather (Ferguson Sr.) thought he actually owned the acreage. Atlanta's Mr. Ribble also testified that he believed Ferguson Sr. thought he was entitled to the royalties he was receiving. Based upon this and other evidence in the record, the trial court was reasonably justified in holding Ferguson Sr. committed no fraud, and as a consequence, we are in no position to hold the court was clearly wrong in so finding.

For the reasons stated above, we affirm on appeal but modify to award prejudgment interest and affirm on cross-appeal.