**HOWELL PETROLEUM CORPORA-TION, Plaintiff–Appellant, Cross–Appellee,**

v.

**SAMSON RESOURCES COMPANY, Defendant–Appellee, Cross–Appellant.**

**Nos. 88–2129, 88–2551 and 88–2629.**

United States Court of Appeals, Tenth Circuit.

May 17, 1990.

B.J. Rothbaum, Jr. (David E. Pepper, Michael S. Richie, William J. Skepnek and Brinda K. White on the briefs), Linn & Helms, Oklahoma City, Okl., for appellant/cross-appellee, Howell Petroleum Corp.

James A. Kirk (Jon W. Laasch with him on the briefs), Kirk & Chaney, Oklahoma City, Okl., for appellee/cross-appellant, Samson Resources Co.

Before McKAY, ANDERSON, Circuit Judges, and THEIS,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Howell Petroleum Corporation ("Howell") owns overriding royalty interests in

_____

* Honorable Frank G. Theis, Senior Judge, U.S. District Court, for the District of Kansas, sitting   by designation.

three oil and gas wells operated by Samson Resources Company ("Samson"): the McClure No. 2–5 Well in Ellis County, Oklahoma ("the Oklahoma well"), and the Ozark Real Estate No. 2–19 Well and the Yeager No. 2–20 Well in Johnson County, Arkansas (respectively, "the Ozark well" and "the Yeager well"; collectively, "the Arkansas wells"). When Samson failed to pay any royalties, Howell brought suit in federal court in Oklahoma, seeking proceeds of $183,535.13 from the Oklahoma well and $543,649.60 from the Arkansas wells, plus statutory interest. Samson answered, denying liability.

Before the trial, the claim arising from the Oklahoma well was settled. The Arkansas claims were tried to the court. Samson argued that Howell could not recover any proceeds which were due more than three years before suit was filed, on the theory that the action was brought under Ark.Stat.Ann. § 53–525 (which governs the payment of "proceeds derived from the sale of oil or gas production"), and therefore was subject to Oklahoma's three-year limitations period for "an action upon a liability created by a statute ...," Okla.Stat. tit. 12, § 95. Howell contended that a different limitations period applied because the action was one for the imposition of a constructive trust.

The court found that Samson had withheld royalties, but that Howell was not entitled to a constructive trust because that theory had not been pled. Consequently, Howell's recovery was limited to the $86,836.55 which had come due in the three years preceding the suit. The court also held that Howell could not collect interest under the authority of the Arkansas statute.

Each party claimed to have prevailed, and sought attorney's fees under section 53–525. In addition, Howell sought a fee award for successfully settling the Oklahoma claim, and court costs. The court denied both parties' motions.

## I.

Howell first argues that the district court erroneously denied its request for a constructive trust and should have applied "the statute of limitations applicable to actions for the imposition of a constructive trust." Brief of Appellant at 14. The parties' contentions revolve around whether or not Howell sufficiently pled a constructive trust theory, and, if so, whether or not Howell was entitled to such relief. We need not resolve these questions, however, because Howell's argument misconstrues the nature of a constructive trust. A constructive trust is a remedial device used by courts to enforce substantive rights, *Ladd v. State ex rel. Oklahoma Tax Comm'n,* 688 P.2d 59, 62 (Okla.1984); *Goodwin v. Beard,* 434 P.2d 192, 196 (Okla.1967); *Wootton v. Melton,* 631 P.2d 1337, 1341 (Okla.Ct.App.1981); it is not itself a substantive right. *See generally* G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 471 (1978 & Supp.1989); 5 A. Scott & W. Fratcher, *The Law of Trusts* §§ 461–62 (1989).

A suit seeking a constructive trust is governed by the statute of limitations applicable to the underlying cause of action. *See Green v. Oilwell, Div. of United States Steel Corp.,* 767 P.2d 1348, 1353 n. 9 (Okla.1989); *Hughes v. Fidelity Bank, N.A.,* 645 P.2d 492, 495 (Okla.1982); *Barefoot v. Oklahoma Nat'l Bank & Trust Co.,* 474 P.2d 652, 656 (Okla.1970); *Jones v. Jones,* 459 P.2d 603, 604 (Okla.1969); *Morris v. Leverett,* 434 P.2d 912, 920 (Okla. 1967).[1] The district court did not err in

---

1. Just as the choice of the applicable statute of limitations is unaffected by a plaintiff's request for a constructive trust, the time the limitations period commences to run is unaffected by the plaintiff's choice of remedy. *See* 5 A. Scott & W. Fratcher, *supra,* at § 462.4. Howell relies upon *Becker v. State ex rel. Department of Public Welfare,* 312 P.2d 935 (Okla.1957), for the proposition that the statute does not begin to run against a plaintiff seeking a constructive trust

until the defendant unambiguously repudiates the trust. That case involved a claim that property the defendant obtained fraudulently was held in constructive trust for the cross-claimants' benefit. Regarding the statute of limitations, the court first noted that the defendant waived any defense based on the statute because he failed to plead it. *Id.* at 942. Four paragraphs later, the court said that the claim was not barred by the statute of limitations because

failing to apply "the statute of limitations applicable to actions for the imposition of a constructive trust" because Oklahoma has no such thing.[2]

## II.

■ Howell also claims that the district court erred when it denied Howell statutory interest. Ark.Stat.Ann. § 53–525 (now Ark.Stat.Ann. § 15–74–601(a)) sets time limits for the payment of "proceeds derived from the sale of oil or gas production," and allows for twelve percent annual interest on late royalties. However, the statute provides that "any delay in determining the persons legally entitled to an interest in such proceeds from production caused by unmarketable title to such interest shall not affect payments to persons whose title is marketable." *Id.* This implies that the interest penalty does not apply to payments which were late because the payee's title was unmarketable.

In *TXO Production Corp. v. Page Farms, Inc.*, 287 Ark. 304, 698 S.W.2d 791 (1985), the Pages executed an oil and gas lease to TXO. The Pages were sent a division order which correctly recited their interest, but they did not promptly sign and return it. For this reason, TXO withheld royalty payments. The Arkansas Supreme Court affirmed an award of interest under section 53–525. Regarding TXO's argument that the delay was caused by the Pages' title being unmarketable, the court said:

"The marketability of a title is to be determined by the public record. There is no indication that Page Farms did not

have a clear record title while TXO was delaying its payments. In fact, TXO's own examining attorney had approved the title."

*Id.* 698 S.W.2d at 792. The court went on to state that the title was not rendered unmarketable by the Pages' failure to execute the division order. *Id.* at 793; *accord Hull v. Sun Refining & Marketing Co.*, 789 P.2d 1272 (Okla.1989) (interpreting an identical statute and holding that "because the only condition for which [the statute] justifies suspension of royalty payments is the existence of unmarketable title, failure to execute a division order is not a defense to an action for the payment of proceeds from oil production").

In *Atlanta Exploration, Inc. v. Ethyl Corp.*, 301 Ark. 331, 784 S.W.2d 150 (1990), one Ferguson assigned a plot of land to his grandson ("Ferguson, Jr."), who died and left the land to his son ("Ferguson III"). After Ferguson, Jr. died, Ferguson conveyed the same land to his son ("Ferguson, Sr."), who leased the oil and gas rights to the defendant. Unaware that Ferguson III actually owned the land, the defendant paid royalties to Ferguson, Sr. Ferguson III sued to collect past royalties. The Arkansas Supreme Court affirmed the trial court's refusal to award statutory interest:

"Here, [the defendant] made timely payments, but due to a mistake, it made them to the wrong person.... [O]ur law governing timely oil and gas payments ... should be construed with appropriate regard to the spirit which prompted its enactment, the mischief sought to be abolished and the remedy proposed. Ar-

the cross-claimants had no notice that the defendant had repudiated the trust. *Id.*

The second statement is dicta because the issue had been waived and was not before the court. Further, such a rule makes sense when the underlying claim is for fraud, because a fraud claim does not arise until the fraud is discovered, Okla.Stat. tit. 12, § 95, and the repudiation of the trust and the discovery of the fraud often will be simultaneous. In other cases, however, such a rule would contradict the cases cited above by making the time during which a suit may be filed depend upon the plaintiff's choice of remedy rather than the nature of the underlying claim. *See generally* Annotation, *When Statute of Limitations Starts to*

*Run Against Enforcement of Constructive Trust,* 55 A.L.R.2d 220 (1957 & Supps. 1987 & 1989) (when statute begins to run differs, depending upon nature of underlying claim). Therefore, the *Becker* dicta does not apply to the present case.

2. Arguably, the district court should have used the limitations period mandated by Okla.Stat. tit. 12, § 105 for "a claim accruing outside this state." Because Howell has not made this argument, the issue has been waived and we will not consider it. *See, e.g., Adams–Arapahoe School Dist. No. 28–J v. Continental Ins. Co.,* 891 F.2d 772, 776 (10th Cir.1989).

kansas's law is designed to prevent a company from withholding the payment of royalties to persons entitled to them. It does not, however, embrace the situation where timely payments are made but, by mistake, were made to the wrong person."

*Id.* 784 S.W.2d at 153 (citations omitted).

### A.

■ Samson sent Howell a division order for the Ozark well, based upon a title opinion, reciting Howell's interest as approximately six percent. Howell disputed this figure, believing that its share was seven percent, and did not sign and return the order. Samson would not pay royalties without an executed division order. There was no dispute over the marketability of Howell's title to the six percent claim; only its title to the land entitling it to additional royalties was unmarketable.

Had Howell not asserted an entitlement to the additional one percent, Samson clearly would not have been justified in delaying payment of the undisputed six percent. As in *Page Farms*, the defendant's own title opinion showed the marketability of Howell's six percent interest, and Howell's failure to return the division order did not render that title unmarketable. It is clear from the statute that the unmarketability of one person's title should not delay the payment of other entitled parties' royalties, but it is not clear whether the unmarketability of part of one person's title justifies a delay in paying the rest of that same person's proceeds. While the issue is not free from doubt, we believe that the Arkansas Supreme Court would not interpret this provision as excusing a delay in the payment of royalties on the interest in which Howell's title was marketable. *See* Wright, *The Arkansas Law of Oil and Gas*, 10 U.Ark. Little Rock L.J. 5, 25 (1987–88) ("the Arkansas Supreme Court is likely to interpret section 53–525 in favor of the ... party entitled to receive lease proceeds" (citing, e.g., *TXO Prod. Corp. v. First Nat'l Bank*, 288 Ark. 338, 705 S.W.2d 423, 424–25 (1986) (holding that the time limits in section 53–525 begin to run as soon as the oil or gas is delivered, not when

payment is actually made)). This is a case of "a company ... withholding the payment of royalties to persons entitled to them." *Atlanta Exploration, Inc. v. Ethyl Corp.*, 784 S.W.2d at 153. Accordingly, we reverse the district court's decision not to grant interest on Howell's royalties from the Ozark well.

### B.

■ A mortgage on Howell's share of the Yeager well had been released, and the release filed with the county, shortly after the well began producing. However, Samson was unaware of the release and sent Howell a division order reflecting the existence of the mortgage, along with a request for evidence that the mortgage had been satisfied. Howell signed and returned the order, but did not provide a copy of the release. Consequently, Samson did not pay any royalties.

This delay is akin to the situation in *Atlanta Exploration*. *Page Farms* is distinguishable because in that case, there was "no indication that Page Farms did not have clear title...." *TXO Prod. Corp. v. Page Farms, Inc.*, 698 S.W.2d at 792; *see Atlanta Exploration, Inc. v. Ethyl Corp.*, 784 S.W.2d at 153 (making the same distinction). Perhaps Samson should have referred to "the public record," *TXO Prod. Corp. v. Page Farms, Inc.*, 698 S.W.2d at 792, before delaying payment because of the perceived unmarketability, but that failure is excusable in light of the fact that Howell returned a division order reflecting the continued existence of the mortgage. This misled Samson, just as the defendant in *Atlanta Exploration* was misled by the conduct of the Ferguson clan. Acting pursuant to an executed division order is not "the mischief sought to be abolished," *Atlanta Exploration, Inc. v. Ethyl Corp.*, 784 S.W.2d at 153, by section 53–525. The district court properly denied Howell interest on the royalties from the Yeager well.

### III.

■ Samson contends that it was the prevailing party in the district court, so it

was "entitled to" its attorney's fees under Ark.Stat.Ann. § 53–525 (recodified as Ark. Stat.Ann. 15–74–603(e)).[3] It is not clear whether the trial court had any discretion to deny fees to the prevailing party. *Compare Darragh Poultry & Livestock Equip. Co. v. Piney Creek Sales, Inc.*, 294 Ark. 427, 743 S.W.2d 804, 806 (1988) (trial judge has no discretion not to award costs where authorizing statute does not so indicate) *with Atlanta Exploration, Inc. v. Ethyl Corp.*, 784 S.W.2d at 153 (affirming decision of trial court not to award attorney's fees under section 53–525 to plaintiffs who recovered overdue royalty payments, but no interest thereon). We need not resolve this question, because Samson was not "the prevailing party."

Samson contends that it was the prevailing party because the trial court accepted its contentions on almost every significant issue. This argument conveniently overlooks the fact that the court held Samson liable for $86,836.55.[4] Samson has presented no authority for the proposition that a defendant who has been found liable for a significant sum can be considered the prevailing party.[5]

Our reversal of the trial court's decision not to award Howell interest on the proceeds from the Ozark well further weakens Samson's position. *See Brookside Village Mobile Homes v. Meyers*, 301 Ark. 139, 782 S.W.2d 365, 367–68 (1990); *Ragland v. Allen Transformer Co.*, 293 Ark. 601, 740 S.W.2d 133, 137 (1987), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1734, 100 L.Ed.2d 197 (1988) (a fee award to a prevailing party must be reversed when the underlying judgment is reversed).

Samson did not prevail in this action.

## IV.

■ Howell contends that it should have been awarded its costs pursuant to Federal Rule of Civil Procedure 54(d). The trial court's decision whether or not to tax costs will be reversed only for an abuse of discretion. *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 936 (10th Cir.1984). The court was within its discretion to refuse to award costs to a party which was only partially successful. *See In re Corrugated Container Antitrust Litigation*, 756 F.2d 411, 418 (5th Cir.1985); *Sobel v. Yeshiva Univ.*, 619 F.Supp. 839, 844 (S.D.N.Y.1985).

## V.

■ Finally, Howell claims that it should have been awarded its attorney's fees for successfully settling the claim arising from the Oklahoma well, under an Oklahoma statute entitling "[t]he prevailing party" in an action brought to recover overdue oil or gas royalties to recover attorney's fees, Okla.Stat. tit. 52, § 540.

Samson responds that, in Oklahoma, only a party which obtains a final judgment on the merits can be considered a prevailing party. It is clear that a party "prevail[s]" when the opponent confesses to a judgment. *See Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1187 (Okla.1987); *Wieland v. Danner Auto Supply, Inc.*, 695 P.2d 1332, 1333 (Okla.1984); *Dulan v. Johnston*, 687 P.2d 1045, 1047 (Okla.1984); *Cox v. American Fid. Assur. Co.*, 581 P.2d 1325, 1326 (Okla. Ct.App.1977). Samson seeks to distinguish these cases on the grounds that, unlike a

---

**3.** Howell also made a motion for fees under section 53–525, which the district court denied. That decision was not appealed.

**4.** Attorney's fees are to be awarded to "[t]he prevailing party in any proceeding brought pursuant to this Act," meaning one in which "persons legally entitled to the proceeds seek relief for the failure of the purchaser to make timely payment...." Ark.Stat.Ann. § 53–525 (now Ark.Stat.Ann. § 15–74–603(b)). This includes a claim for the royalties themselves, as well as a claim for interest thereon. *See TXO Prod. Corp.*

*v. Page Farms, Inc.*, 698 S.W.2d at 792 ("This action was brought ... under [section 53–525] to recover unpaid royalties....").

**5.** Samson's reliance upon *Bosworth v. Eason Oil Co.*, 202 Okl. 359, 213 P.2d 548, 556 (1949), is misplaced. Fees were awarded to the defendant in that case under the court's equitable discretion, not because the defendant (who was found liable for $500 of the $200,000 sought by the plaintiff) was "the prevailing party." Also, there is quite a difference between being liable for $500 and being liable for almost $87,000.

confession of judgment, an out-of-court settlement does not involve a final judicial determination on the merits. After examining the relevant authorities, we agree.

In *Wieland,* the Oklahoma Supreme Court stated that fee awards to prevailing parties were "not limited to situations where a party prevails only after a trial on the merits: '... [T]he operative factor is success, not at which stage or how that success is achieved....'" *Wieland v. Danner Auto Supply, Inc.,* 695 P.2d at 1334 (quoting *Parker v. Matthews,* 411 F.Supp. 1059, 1063 (D.D.C.1976), *aff'd,* 561 F.2d 320 (D.C.Cir.1977)). But in the next paragraph the court noted:

> "A judgment by confession has the same legal effect as a judgment after trial.... It comes under the general definition ...: 'A judgment is the final determination of the rights of the parties in an action.' Thus, a judgment by confession ... is a final determination that a plaintiff has prevailed on his claim."

*Wieland v. Danner Auto Supply, Inc.,* 695 P.2d at 1334 (quoting Okla.Stat. tit. 12, § 681) (citations omitted).

The impression that, under Oklahoma law, a final judgment is a prerequisite to being a prevailing party [6] is strengthened by *Carter v. Rubrecht,* 188 Okl. 325, 108 P.2d 546 (1940), a decision relied upon in *Wieland,* 695 P.2d at 1334. In *Carter,* the plaintiff brought suit, then dismissed the action without prejudice. The defendant's request for attorney's fees, as the prevailing party, was rejected. The court held that a penalty statute was to be strictly construed, and noted "the policy to tax the attorney's fee only in those cases where the other party was determined by final judgment to be the losing party...." *Carter v. Rubrecht,* 108 P.2d at 548; *see also Kaw Valley Fair Ass'n v. Miller,* 42 Kan. 20, 21 P. 794, 795 (1889) (distinguishing between a tender of the amount sought and an offer to confess to judgment), *cited in Dulan v. Johnston,* 687 P.2d at 1047.

The district court correctly denied Howell's motion for fees.

The judgment of the district court is in part AFFIRMED, and in part REVERSED and REMANDED for a determination of the interest due Howell on the proceeds from the Ozark well.

---

6. We note that the *Wieland* court declined "to include only a party who successfully obtained a judgment *after a trial on the merits*" as a "prevailing party." *Wieland v. Danner Auto*

*Supply, Inc.,* 695 P.2d at 1334 (emphasis added). If no judgment at all were necessary, the underscored words could have been omitted.