UNITED STATES of America,
Plaintiff,

v.

Charles H. HARVEY, Sam G. Craig II, Donald L. Goggins, James G. Goggins, Calvin A. Wantland Jr., Deci–Ma Management Corp., Rockwood Partnership, and Wyckford Associates, limited partnership, Defendants.

No. IP 96–0554–C–T/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 7, 1997.

Marsha C. Massey, Assistant United States Attorney, Indianapolis, IN, for U.S.

Irving Fink, Yosha, Ladendorf & Krahulik, Indianapolis, IN.

Robert A. Rose, Charles V. Traylor, Dan, Pecar, Newman & Kleiman, Indianapolis, IN.

Thomas C. Scherer, Bingham, Summers, Welsh & Spilamn, Indianapolis, IN.

**Entry Addressing Summary Judgment Matters**

TINDER, District Judge.

The court, having considered the numerous documents filed in conjunction with the parties' summary judgment motions in this matter, finds that Defendants' motions for summary judgment will be **DENIED IN PART** and **GRANTED IN PART**, and that Plaintiff's cross-motion for summary judgment will be **DENIED**.

## I. Introduction

The government brought this action on behalf of the Secretary of the Department of Housing and Urban Development ("HUD"). The HUD Secretary ("Secretary") seeks civil damages allegedly arising from the "unauthorized use, unsupported expenditures of assets and income of the Woodbrook Apartments, and the retention of monies in constructive trust by the Defendants in violation [of] a regulatory agreement with the Secretary." (Second Am. Compl. ¶ 1.)

The government's Second Amended Complaint is structured in six counts. Counts I, IV and VI seek a constructive trust for allegedly unauthorized distributions of funds. (Second Am. Compl., at 6–7, 10–11.) Counts II, III and V seek statutory damages. (*Id.*, at 7–11.) In a nutshell, the government, alleging that Defendants Harvey, Craig, D. Goggins and J. Goggins breached their contract with HUD by making unauthorized payments from project funds, seeks money damages pursuant to equitable and legal remedies. (Br. Supp. Pl.'s Mot. Summ. J. and Resp. to Def.s' Mot. Summ. J. at 1.)

Additionally, Defendant Craig filed an indemnification cross-claim against Defendant Harvey.[1] (Answer of Sam G. Craig, II, Donald L. Goggins and James G. Goggins to Second Am. Compl., Affirmative Defenses and Cross-cl. of Sam G. Craig, II at 7–9.)

A brief synopsis of the nearly twenty-five documents dealing with summary judgment filed in this case follows. Defendants Harvey, Wantland, Deci–Ma, Rockwood Partnership ("Rockwood") and Wyckford Associates ("Wyckford") (collectively "Harvey Defendants") filed a motion for summary judgment on December 30, 1996. The government incorporated in its response to this motion, filed February 10, 1997, a cross-motion for summary judgment. On February 6, 1997, Defendants Craig, D. Goggins and J. Goggins (collectively "Craig Defendants") filed an independent motion for summary judgment. The Harvey Defendants moved to join in the Craig Defendants' motion for summary judgment on February 12, 1997. The court granted the motion to join. Although the Harvey Defendants did not formally join in the Craig Defendants' reply, neither did they disavow the reply; therefore, the court deems that the Harvey Defendants have also joined in the Craig Defendants' reply. The government filed a separate response to each of the motions for summary judgment filed by the two groups of Defendants. Each group of Defendants filed oppositions to the government's summary judgment motion; the government in turn filed a separate reply to each opposition.

The following material facts are not in dispute. Defendants Harvey, Craig, D. Goggins and J. Goggins became general partners in the "Woodbrook Associates" limited partnership formed under Indiana's Uniform Limited Partnership Act on July 2, 1980. (Br. Supp. Pl.'s Mot. Summ. J. and Resp. to Def.s' Mot. Summ. J. at 2.) On August 20, 1980, Harvey, on behalf of the partnership, entered into a Regulatory Agreement for Insured Multi–Family Housing Projects ("Agreement") covering the Woodbrook Apartments project. (*Id.* at 2–3.) The Agreement provides that "surplus cash" cannot exist if

---

1. Pursuant to the government's motion, the court has since dismissed Defendants Craig, D. Goggins and J. Goggins. It is, therefore, unclear to the court whether Mr. Craig intends to pursue his cross-claim. The court would appreciate if the parties would advise the court on this matter.

Woodbrook Associates defaults on its mortgage to HUD. (*Id.* at ¶ 16(f).) Woodbrook Associates defaulted on the mortgage in 1987. (Br. Supp. Pl.'s Mot. Summ. J. and Resp. to Def.s' Mot. Summ. J. at 3.) The Agreement further specifies that the Secretary must give the partnership written approval to distribute assets of Woodbrook Associates, other than "surplus cash, except for reasonable operating expenses and necessary repairs." (Def.s' Ex. E, Agreement ¶ ¶ 8(b) & (e).) The following allegedly improper post–1987 payments made by Woodbrook Associates, therefore, were definitionally not made from surplus funds: (1) $166,944 repayment of advances paid to Deci–Ma Management between April 29 and December 14, 1988, (*id.* at 5); (2) $10,000 management fee paid to Wantland, on June 29, 1988, (*id.* at 5–8); (3) $378.28 travel expenses paid to Wantland on August 23, 1988, (*id.* at 8); (4) $3,825 repayment of advances paid to Rockwood Apartments on April 29, 1988, (*id.* at 8–9); and (5) $3,000 repayment of advances paid to Wyckford Commons on December 14, 1988, (*id.*). The foregoing payments were revealed to HUD in Woodbrook Associates's monthly income and expenditures reports. (*Id.* at 8–10.) On December 8, 1988, and January 4 and 31, 1989, HUD protested to, and demanded repayment from, Woodbrook Associates for all of the foregoing disbursements except for the repayment of advances to Rockwood and Wyckford. (*Id.* at 5–8.) HUD received an audit of Woodbrook Associates's 1988 financial statements on August 18, 1992. (*Id.* at 9.)

The monthly reports also revealed that Woodbrook Associates used other than surplus funds to make allegedly improper disbursements between December 5, 1990, and April 25, 1996, to pay: (1) $24,810.00 to Chateau, Inc. for market studies, (*id.* at 10); (2) $32, 350.00 to the bankruptcy trustee, (*id.* at 11–13); (3) $1,500 in appraisal fees, (*id.* at 13–14); (4) $3,887.00 to Harvey for general partner travel expenses, (*id.* at 14–15); (5) $5,606.00 for partnership legal fees, (*id.* at 15–16); and

(6) $2,284.00 for secretarial services, (*id.* at 16–17).

## II.  Summary Judgment Standard

The Seventh Circuit stated the standard for summary judgment in *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971 (7th Cir.1996):

> Under Fed. R. CIV. P. 56(c), summary judgment is warranted only if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law."
>
> The initial burden of production rests with the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

*Id.* at 978. The nonmovant cannot just demonstrate some factual disagreement between the parties; the issue must be "material." Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Sokaogon Chippewa Community v. Exxon Corp.*, 2 F.3d 219, 225 (7th Cir.1993), *cert. denied*, 510 U.S. 1196, 114 S.Ct. 1304, 127 L.Ed.2d 655 (1994); *Colosi v. Electri–Flex Co.*, 965 F.2d 500, 503–04 (7th Cir.1992). If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law.

*Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011, 1014 (7th Cir.1996).

## III. Discussion

Before discussing the merits, the court must address Defendants' evidentiary objections to the Declaration of Sam Burch. The gist of Defendants' objection is that witnesses cannot testify as to ultimate issues. (Def.s' Evidentiary Objs. to Certain Ev. Offered Supp. Pl.'s Mot. Summ. J.) To the contrary, however, testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a); *United States v. Allen,* 10 F.3d 405, 414 (7th Cir.1993). Thus, testimony that is rationally based on Burch's personal perception is admissible to the extent that it is helpful to the trier of fact. *United States v. Saulter,* 60 F.3d 270, 276 (7th Cir.1995); *Allen,* 10 F.3d at 415. Mr. Burch, of course, cannot make legal conclusions for the court; however, while not dispositive, an Agency's interpretations of its regulations is given deference. *Green v. Shalala,* 51 F.3d 96, 100 (7th Cir.1995). Consequently, Defendants' objection to portions of Burch's declaration is **OVERRULED** with respect to factual issues helpful to the court, and **SUSTAINED** with respect to legal issues.

The court now addresses a second preliminary matter concerning the applicable law in this case. The Defendants' imply that Indiana state law should govern the imposition of a constructive trust in this case. (Harvey Def.s' Br. Opp'n Pl.'s Mot. Summ. J. at 4–6.) The government counters that Indiana law is not applicable because the United States is a party. (Pl.'s Reply Harvey Br. Opp'n Pl.'s Mot. Summ. J. at 5.) Neither side cites any authority for these contradictory assertions.

The court finds that Indiana law should inform its decision. Although it is axiomatic that federal law governs questions concerning the interpretation of a federal statute, *see Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 98, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), courts applying federal law may, "either fashion a uniform federal common law rule or adopt state law as the federal rule of decision." *In re Columbia Gas Sys., Inc.,* 997 F.2d 1039, 1058 (3d Cir.1993), *cert. denied,* 510 U.S. 1110, 114 S.Ct. 1050, 127 L.Ed.2d 372 (1994) (citing *Kamen,* 500 U.S. at 98, 111 S.Ct. 1711; *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727–28, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) ("Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules.")). Federal law should generally mirror the relevant state law "unless state law would undermine the objectives of the federal statutory scheme and there is a distinct need for nationwide legal standards." *Id.*

Thus, courts develop a federal common law rule only as an exception. *Id.* To determine the need for a uniform federal rule, courts consider: (1) the need for a nationally uniform law; (2) whether incorporation of state law would frustrate the specific objectives of the federal program at issue; and (3) the extent to which application of a federal common law rule would upset commercial expectations that state law would govern. *Kimbell Foods, Inc.,* 440 U.S. at 727–28, 99 S.Ct. 1448.

Here, whether the allegedly improper payments are held in trust for the Secretary does not sufficiently implicate important federal interests to warrant the application of federal common law. First, no uniform law is necessary. State commercial codes and the federal statutory scheme adequately protect the federal interests at stake here. *See Kimbell Foods, Inc.,* 440 U.S. at 729, 99 S.Ct. 1448. For example, the relevant Indiana statute of limitations is the same as that found in 28 U.S.C. § 2415(a) and 12 U.S.C. § 1715z–4a(d). Furthermore, in situations such as this, the government will file its suit to recover allegedly improper payments pursuant to 12 U.S.C. § 1715z–4a, as opposed to resorting to a constructive trust. Here, the government did indeed file § 1715z–4a

claims as alternate forms of relief. Also, the conclusion that a uniform law is not necessary is bolstered by the individually-negotiated agreements by the Secretary. *Id.* Finally, the constructive trust issue does not even require interpretation of the federal statute.

Second, reference to state law will not frustrate the purposes of the federal statute. Indeed, "[s]tate commercial law is as suitable to the governance of ... any [ ] type of loan, and the federal courts have neither the time nor the specialized knowledge to forge a new body of commercial law; by doing so they would simply be adding to the already excessive complexity of American law." *United States v. Stump Home Specialties Manuf. Inc.,* 905 F.2d 1117, 1119 (7th Cir.1990) (holding that state law generally applies to disputes arising from loan agreements with the Small Business Administration). The imposition of a constructive trust is not contemplated in the statutory scheme that forms the basis of the other counts. Rather, the means of enforcement is expressly contained within the scheme; resort to constructive trust is not necessary to efficient enforcement. *See* 12 U.S.C. § 1715z–4a. Most important then, failure to resort to a uniform federal rule outside that already provided for in the statute or by state commercial law will not adversely impact enforcement.

Third, not applying state law to a contractual remedy outside the scope of the statutory scheme would upset commercial expectations. While those entering into an agreement with the Secretary might be familiar with the statutory provisions, they will be less likely to know, or anticipate resort to, federal common law respecting contracts and constructive trusts. Contrarily, real estate developers are generally familiar with state law respecting commercial real estate transactions. Indeed, as the government concedes, (Pl.'s Resp. Def.s' Mot. Summ. J. at 5), the Agreement itself is construed according to general contract-construction principles. Contract *remedies* outside the scope of the statute should fare no differently.

The court therefore finds that Indiana law should control any imposition of a constructive trust. Under Indiana law, "[a] constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Given v. Cappas,* 486 N.E.2d 583, 588–89 (Ind.Ct.App.1985). This equitable duty arises from wrongful conduct such as fraud. *Id.* at 589. "Thus, fraud, either actual or constructive, is a prerequisite to the imposition of a constructive trust." *Shafer v. Lambie,* 667 N.E.2d 226, 229 (Ind.Ct.App.1996) (holding that constructive trusts are subject to the six-year statute of limitations for fraud); *Rollins v. Metropolitan Life Ins. Co.,* 912 F.2d 911, 914 (7th Cir.1990).

In the present case, the government has not alleged any fraud. *See* Fed. R.Civ.P. 9(b) (averments of fraud or mistake must be stated with particularity). Further, there is no fraud, or other misconduct, evident in the record. In fact, all of the disputed payments were fully disclosed to HUD in Woodbrook Associates's monthly reports. Lacking any apparent misconduct, it would be improper to impose a constructive trust in this case.

Failure to impose a constructive trust—a remedial fiction of equity—however, does not uniquely affect the government's position in this case for several reasons. First, even if the court had determined that a uniform law respecting constructive trusts was necessary, resort to the law of the forum in fashioning the federal common law is often proper and would have led to the same result. *Kamen,* 500 U.S. at 98, 111 S.Ct. 1711 (the content of a federal rule need not be wholly the product of a federal court's own devising, rather, " [t]he presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would

be governed by state-law standards."); *Downriver Community Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754, 761 (10th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990). Second, Counts IV and VI merely plead alternate remedies to the statutory remedies sought in Counts III and V respectively. As the government concedes, (Reply Supp. Pl.'s Mot. Summ. J. at 7–9), it can only recover once for its loss, and the statutory counts, which provide for a greater recovery, still remain. Third, Count I would be dismissed as time-barred at any rate.[2] Fourth, it is doubtful that a constructive trust, even without reference to Indiana law requiring wrongful conduct, would be the appropriate remedy in this case where the government is seeking mere money damages for its own coffers, as opposed to for a third party. Indeed,

where an express contract, here the Agreement, covers the subject matter, an implied contract or restitution claim is generally not permitted. 3 Dobbs, Law of Remedies § 4.9(4), at 694; *City of Indianapolis, v. Twin Lakes Enters., Inc.,* 568 N.E.2d 1073, 1079 (Ind.Ct.App.1991). Also, even if the government could prove that the legal remedy would be inadequate, and that the Defendants were unjustly enriched without defense, the court could still refuse to impose a constructive trust. 3 Dobbs, Law of Remedies, § 1.2, at 12 and § 2.1(1), at 58; *Warren,* 796. F.2d at 1001 ("questions about the nature of the remedy are for the district court in the first instance").

At any rate, because the court finds that no wrongdoing on the part of the Defendants has been alleged or is indicated in the record, imposition of a constructive

---

2. The government argues that the statute of limitations does not apply to equitable remedies and that laches does not apply to the government. However, with the merger of law and equity, a constructive trust is more properly referred to as a restitution remedy. 3 Dobbs, Law of Remedies § 1.2, at 12 and § 2.1(1), at 58 (2d ed.1993). Further, it is hard to say when a request for "constructive trust" is legal and when it is equitable. *First Nat'l Bank of Waukesha v. Warren,* 796 F.2d 999, 1000 (7th Cir.1986) (government's characterization as "equitable" does not control in cases where it seeks money for itself, as opposed to for a third party). At any rate, because a constructive trust is a remedial, as opposed to a substantive device, *Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir.1992), *cert. denied,* 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993); *Howell Petroleum Corp., v. Samson Resources Co.,* 903 F.2d 778, 780 (10th Cir.1990), "a beneficiary is barred from enforcing a constructive trust if the limitations period for actions at law in analogous cases has run." *Stone,* 970 F.2d at 1051. Further, it has been expressly held that "statutes of limitations are applicable to constructive trusts." *Kaken Pharmaceutical Co., Ltd. v. Eli Lilly and Co.,* 737 F.Supp. 510, 518 (S.D.Ind.1989); *Howell Petroleum Corp.,* 903 F.2d at 780 ("A suit seeking a constructive trust is governed by the statute of limitations applicable to the underlying cause of action."); Restatement of Restitution § 179 (1937); *see United States v. First Nat'l Bank of Cicero,* 957 F.2d 1362, 1371–72 (7th Cir.1992) (unjust enrichment claims are subject to the

six-year statute of limitations in 28 U.S.C. § 2415(a)).

The above analysis applies to government actions. Although state statutes of limitations do not bind the government, *United States v. Summerlin,* 310 U.S. 414, 415, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), Congress may expressly subject the government to federal statutes of limitations. Congress has done just that with respect to actions for contractual damages, as are sought here, not commenced within six years after the right of action accrues. 28 U.S.C.A. § 2415(a) (West 1994). The government last acknowledged the allegedly improper contractual payments detailed in Count I in January 1989; yet it did not file this action until April 22, 1996. Further, with the exception of the $ 6,825.00 in combined payments to Rockwood and Wyckford, no tolling is alleged or apparent to account for the greater than one-year lack of timeliness. *See* 28 U.S.C.A. § 2416(c) (West 1994) (limitations tolled by lack of knowledge of material facts). Finally, even if the statute of limitations did not apply to bar the action on Count I, laches might. *See Reich v. Sea Sprite Boat Co., Inc.,* 50 F.3d 413, 417 (7th Cir.1995) (it is unsettled whether the United States is subject to laches); *United States v. Administrative Enters., Inc.,* 46 F.3d 670, 672 (7th Cir.1995) (citing Seventh Circuit and Supreme Court cases countenancing application of laches against the government). Therefore, Count I would be time-barred because it was filed after February 1, 1995.

trust is improper. Accordingly, Plaintiff's motion for summary judgment will be **DENIED** and Defendants' motion for summary judgment will be **GRANTED** such that Counts I, IV and VI will be **DISMISSED,** and Defendants Wantland, Deci–Ma, Rockwood and Wyckford will be **DISMISSED.**

■ Turning to Count II, the Defendants assert that 12 U.S.C. § 1715z–4a(d) bars the count since the allegedly improper payments transpired in 1988 and since the Secretary became aware of these payments "as early as December 1988–January 1989." (Reply Supp. Def.s' Mot. Summ. J. at 3–4.) The government, however, contends that it did not become aware of the allegedly improper nature of the payments until it received an audit of Woodbrook Associates's 1988 financial statements on August 18, 1992. (Compl. ¶ 32; Pl.'s Mot. Summ. J. and Resp. to Def.s' Mot. Summ. J. at 9.) Defendants protest that the government admitted in paragraph 26 of the complaint that the Secretary was aware of the payments in 1988. (Reply Supp. Def.s' Mot. Summ. J. at 3–4.) The court rejects Defendants' argument.

Paragraph 26 says that the Secretary informed Defendants of the improper payments in three letters. Even cursory study of the supporting letters makes it clear that the payments to Rockwood and Wyckford are not included in any of the letters. Thus, issues of material fact exist concerning whether the improper nature of the payments was, or reasonably could have been, known to the government prior to the audit, and, if not, whether the audit was completed within a reasonable time. *See Phillips Petroleum Co. v. Lujan,* 4 F.3d 858, 863–64 (10th Cir.1993) (interpreting "reasonableness" requirement of 28 U.S.C. § 2416(c) tolling provision). The court notes, however, that the government's assertion is weak. Woodbrook's

monthly reports designated the payments to Rockwood and Wyckford as "repayment of advances." (Def.'s App. of Exs., Dep. of Barbara Reed, Ex. 1–A at 2 and Ex. 1–G at 2.) It will be hard for the government to distinguish the immediately apparent improper nature of the other "repayment of advances" here at issue, as compared to the need of an audit to explain the repayments to Rockwood and Wyckford. Nonetheless, the identified issues of material fact preclude summary judgment on the payments to Rockwood and Wyckford alleged in Count II.[3] Further, if it is determined that Count II is not time-barred, issues of fact concerning whether the payments were for reasonable operating expenses or repairs exist.

■ The court also rejects Defendants' alternate theory that paragraph 20 of the Agreement immunizes them from personal liability for the allegedly improper payments. The court finds, however, that, depending on the resolution of the issues of material facts just identified, the Defendants could be found liable consistent with paragraph 20 in that the funds, at the very least constructively, did come into their hands, and in that the acts of Woodbrook Associates and its authorized agents are the partners' acts. Ind.Code Ann. §§ 23–4–1–14, 23–4–1–15(a), and 23–16–4–3 (Michie 1995 & Supp.1996). Indeed, Indiana law contemplates suing the general partners individually to enforce the liabilities of the partnership. *See Lewis v. Joseph Hartley & Sons Co.,* 119 Ind. App. 468, 83 N.E.2d 438, 440 (1949); *In re Pappas,* 661 F.2d 82, 86 (7th Cir.1981) (general partners are jointly and severally liable for claims against partnership). Further, there is at least a question of material fact regarding whether the Defendants authorized the payments. Therefore, summary judgment is inappropriate on this count and both the government's

---

**3.** The government also asserts in its cross-motion that the Agreement makes the payments in question subject to a constructive trust. (Pl.'s Mot. Summ. J. and Resp. to Def.s' Mot. Summ. J. at 19–23.) However, as explained above, a constructive trust is not the appropriate remedy here.

and the Defendants' motions for summary judgment on Count II will be **DENIED.**

In Count III, the government alleges six improper payments beginning on December 5, 1990. It seeks statutory recovery under 12 U.S.C. § 1715z–4a. As with Count II, Defendants first assert that personal liability on Count III is precluded by paragraph 20 of the Agreement. However, the same genuine issues of material fact noted with regard to Count II are present here with Count III; therefore, the court finds this argument without merit.

■ The Harvey Defendants also argue, without citing any legal authority, that the Chapter 7 bankruptcy automatic stay provisions bar the government's action (Harvey Def.s' Br. Opp'n Pl.'s Mot. Summ. J. at 6–7.) To the contrary, however, the bankruptcy of Woodbrook Associates, the partnership, does not affect the partners' individual liabilities as the two are separate entities and the partners are not themselves in bankruptcy. *In re Pentell,* 777 F.2d 1281, 1284 (7th Cir.1985); *In re Funneman,* 155 B.R. 197, 200 (Bankr. S.D.Ill.1993). More important, "[t]he automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt." *United States v. Wright,* 57 F.3d 561, 561 (7th Cir.1995).

■ Genuine issues of material fact are present, however, as to whether the payments were for reasonable operating expenses or repairs and whether the partners authorized the payments. Consequently, both the government's and the Defendants' motions for summary judgment on Count III will be **DENIED.**

Count V alleges that the use of Woodbrook Associates's partnership funds to pay bankruptcy fees of $2,500 in 1996 violated the Agreement. The government seeks recovery pursuant to 12 U.S.C. § 1715z–4a. The government contends that payment of bankruptcy fees from other than surplus cash is proscribed. Defendants argue that the bankruptcy fees are reasonable operating expenses. Again, although the Secretary's determination is given deference, the court finds a genuine issue of material fact exists concerning whether the bankruptcy fees were reasonable operating expenses. Accordingly, the government's and the Defendants' motions for summary judgment on Count V will be **DENIED.**

■ The Craig Defendants lastly argue that they withdrew from Woodbrook Associates prior to the allegedly improper payments and, therefore, that they cannot be held liable as general partners. (Def.s' Resp. Opp'n Pl.'s Mot. Summ. J. at 2–3.) The government correctly observes, though, that Defendants do not reference the "Prior Determination" that the partnership agreement requires withdrawing partners to obtain. (Reply Supp. Pl.'s Mot. Summ. J. at 11–13.) At best, then, Defendants' unsubstantiated affidavits could raise a genuine issue of material fact as to whether there were any departure agreements. *See Jones v. Merchants Natl. Bank,* 42 F.3d 1054, 1058 (7th Cir. 1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.")

### IV. Conclusion

Defendants' motion for summary judgment is **GRANTED** with respect to Counts I, IV and VI; therefore, Counts I, IV and VI will be **DISMISSED,** and Defendants Calvin A. Wantland, Jr., Deci–Ma Management Corp., Rockwood Partnership, and Wyckford Associates are **DISMISSED** as parties. Also, Defendants' motion for summary judgment and Plaintiff's motion for summary judgment on Counts II, III and V are **DENIED.** Further, pursuant to Federal Rule of Civil Procedure 56(d), the court finds that, in addition to Defendant Craig's cross-claim against Harvey (if not moot), at least the following genuine issues of material fact remain for determination at trial: (1) whether the allegedly improper nature of the payments in Count II was, or reasonably could have been, known to the government prior to the audit; and, if not, (2) whether the audit was

completed within a reasonable time; (3) whether the payments in Counts II, III, and V were for reasonable operating expenses or repairs; (4) whether any of the general partners withdrew from the Woodbrook Associates partnership prior to the allegedly improper payments; and, if not, (5) whether the payments were authorized.

Finally, because there remain other issues for disposition at trial, no judgment will issue at this time. *See* Fed.R.Civ.P. 54(b).